# ELIAS W. NORTHSTINE v. CATHERINE FELD-MANN et al., Appellants.

### Division One, April 9, 1923.

1. **ACTION AT LAW: Substantial Evidence.** In a suit to quiet title to lands which is an action at law, tried before the court without a jury, if there was any substantial evidence offered at the trial showing jurisdiction of the subject-matter and that the land in suit belonged to plaintiff, its judgment, upon an appeal therefrom by defendant, will be affirmed, unless error was committed in the admission or rejection of testimony or in the giving or refusal of declarations of law.

2. **JURISDICTION: Subject-Matter; Change of Venue: Location of Lands: Burden.** In a suit to ascertain and determine title the burden of proof devolves upon plaintiff to show that the lands lie in the county in which the action is brought, for if the lands lie in another county the circuit court of the county in which the suit is filed has no jurisdiction to try the title, and if it has none it can confer none on the circuit court of another county by changing the venue.

3. ————: **Boundary Between Counties: Channel of Missouri River: Fixed by Statute in 1865: Unchanged by Constitution.** The General Statutes of 1865 (G. S. 1865, p. 194, sec. 44, and p. 200, sec. 66) fixed the middle of the main channel of the Missouri River as the boundary line between the counties of Franklin and Warren, and the Constitution of 1875 declared that "the several counties of this State, as they now exist, are hereby recognized as legal subdivisions of the State" and that "no county shall be divided or have any portion stricken therefrom without submitting the question to a vote of the people of the county, nor unless a majority of all the qualified voters of the county or counties thus affected, voting on the question, shall vote therefor;" and there having been no change by the affirmative vote of the qualified voters of the counties, the boundary line between these two counties as thus fixed in 1875 is still the middle of the main channel of the Missouri River as it was then, and the Circuit Court of Franklin County has no jurisdiction to try the title of lands lying north of what was then the middle of the main channel of the river.

4. ————: ————: ————: **Assumed to Be Permanent.** It cannot be assumed that the middle of the main channel of the Missouri River remains to this day the same as it was at the time of the adoption

of the Constitution of 1875; marked shiftings of the channel are constantly occurring, and in order to establish jurisdiction in the Circuit Court of Franklin County to try the title of lands which now lie south of the present channel, the plaintiff must prove, when the court's jurisdiction is challenged, that the lands lie south of the middle of the main channel of the river as it was in 1875.

5. ————: ————: **Former Adjudication: Different Parties..** A judgment of the circuit court, in a case in which the present plaintiff was the plaintiff, but to which the present defendants were neither parties nor privies, and do not now claim under the present plaintiff or through his chain of title, but claim under a Government patent and by adverse possession, is not binding on defendants, and is not competent evidence on the issue of *res adjudicata.*

Appeal from Cole Circuit Court.—*Hon. John G. Slate,* Judge.

REVERSED AND REMANDED.

*Dumm & Cook* and *Pearson & Pearson* for appellants.

(1)    The demurrer to the evidence should have been sustained, because the court was without jurisdiction of the subject-matter of this action.    The real estate attempted to be described in the petition, in particular Sections 26-27, Township. 45, Range 2 west, is situated on the north side of "the middle of the main channel of the Missouri River," in Warren County; and this suit was originally instituted in the Franklin County Circuit Court. Sec. 1753, R. S. 1909; Sec. 1179, R. S. 1919. (a) The statutes have defined the boundary line, between Warren County on the north and Franklin County on the south, as being "the middle of the main channel of the Missouri River." Secs. 9334-9356, R. S. 1919. And this line has been so maintained and carried as the division line between said counties, in each revision of the statutes of the State of Missouri, since and before the General Statutes of 1865. Secs. 3551, 3573, R. S. 1909; Secs. 6873, 6895, R. S. 1899; Secs. 2994, 3016, R. S. 1889; Secs. 44-46,

G. S. 1865. (b) For this reason "the middle of the main channel of the Missouri River" must be taken as the southern boundary line of Warren County and northern boundary line of Franklin County, at the time of the institution of this suit. Art. 4, sec. 41, Mo. Constitution. (c) The Constitution stabilized county boundary lines, and fixed the only way of changing them. Secs. 1, 3, 4, art. 9, Mo. Constitution; State ex rel. v. Baker, 129 Mo. 482. The boundary line, between Warren and Franklin Counties, at the date of the adoption of the present Constitution, was "the middle of the main channel of the Missouri River." This line has never been changed, in the manner provided by the Constitution; nor in any other way. (d) The court should have taken judicial notice of the fact, that the real estate described in the petition, is north of "the center line of the main channel of the Missouri River," and within the boundaries of Warren County. The law makes it imperative upon the court to take judicial notice of the boundary lines of the counties of the state in which it is sitting. Wood v. Henry, 55 Mo. 560; State v. Pennington, 124 Mo. 388; Parker v. Burton, 172 Mo. 85; Keaton v. Hamilton, 264 Mo. 565, 573; Noble v. Coates, 230 Mo. 189, 205; Vogelsmeier v. Prendergast, 137 Mo. 271; Pool v. Brown, 98 Mo. 675; 17 Am. & Eng. Enc. Law, sec. 4, p. 912. (e) Plaintiff's petition describes the land in controversy as being in Sections 26 & 27, township 45 N., Range 2 W. The court should take judicial knowledge that these two sections are in Warren County, Missouri. Cases above. (2) The real estate attempted to be described in plaintiff's petition was no description of any land. Secs. 6992-7023, R. S. 1919; Lockwood v. Railroad, 65 Mo. 233; Morgan v. Railroad, 63 Mo. 129; Funkhouser v. Peck, 67 Mo. 19.

*Irwin & Haley, Jesse H. Schaper* and *John W. Booth* for respondent.

(1) In Missouri the owner of land bounded by a navigable stream does not own to the thread of the stream. Cooley v. Golden, 117 Mo. 33; Frank v. Goddin,

193 Mo. 390; Hahn v. Dawson, 134 Mo. 581. (2) Land formed on the bottom of a navigable river otherwise than by accretion belongs to the State—not to the owner of land which by erosion washed away so that its site became part of the bed of the river. Vogelsmeier v. Prendergast, 137 Mo. 271. (3) When the middle of the main channel of a navigable (or other) river is by law made the boundary line of lands, and afterwards by avulsion a new channel is made, then even though the new channel becomes the main channel, the boundary line remains in the middle of the channel in which it was established, even though the waters of the river depart from that channel leaving it dry land. Missouri v. Kentucky, 11 Wall. 395. Cited in State of Washington v. State of Oregon, 211 U. S. 127 and 214 U. S. 205; State of Nebraska v. Iowa, 143 U. S. 359, and 145 U. S. 519; Missouri v. Nebraska, 196 U. S. 23. (4) The rule that boundary lines are not changed by avulsion applies alike to private and public boundaries. Citations above. (5) Change of the flow of the waters of the Missouri from one to another channel, as in this cutting off of as much as 400 acres of one county from the remaining land of that county cannot change the boundary line of the county so reduced. Sec. 3, Art. 9, Mo. Constitution.

RAILEY, C.—This action was commenced in the Circuit Court of Franklin County, Missouri, on May 15, 1920, in two counts. In the first count plaintiff claimed to be the owner in fee simple of the following described real estate, situate in Franklin County, Missouri, to-wit:

A tract of land being part of Sections 26 and 27, Township 45 north, Range 2 west, of the Fifth Principal Meridian, as surveyed and subdivided by Jesse F. Ekey, county surveyor of said county, by Edgar Rapp, deputy, as shown by plat and field notes of survey filed in the office of the Clerk of the County Court of Franklin County, and approved by said court on April 7, 1919, and described as: Beginning at a point in the county line between Warren and Franklin Counties, according to a survey and plat thereof, marked Exhibit A, made by Ben-

jamine F. Frick, County Surveyor of Warren County,
Missouri, on May 7, 1918, and approved by the Circuit
Court of St. Louis County, by an order and decree made
by said circuit court of record in the case of Elias W.
Northstine, plaintiff, v. Warren County, defendant, No.
29,316, in July, 1918, a certified copy of which order and
decree of court is recorded in the office of the Recorder of
Deeds within and for Franklin County, in Book 85, page
382, etc., said point being south 81 degrees and 13 min-
utes west 4.33 chains from corner No. 7 on said county
line survey, thence south 81 degrees and 13 minutes west
along said county line 14.54 chains to a point in east line
of Meyer's claim, thence south 33 degrees west along
Meyer's line 31.12 chains to an iron rod, thence due south
11 chains to a point, thence south 54 degrees and 25 min-
utes east 16.34 chains, thence south 53 degrees and 16
minutes east 7.63 chains, thence south 50 degrees and
36 minutes east 9.36 chains, thence south 48 degrees and
29 minutes east 6.50 chains, thence south 48 degrees and
10 minutes east 4.95 chains to a point, thence south 89
degrees and 15 minutes east 1.64½ chains to the south-
west corner of claim of Bocklage et al., thence north 1
degree and 38 minutes east along line of last named
claim 23.80½ chains to the northwest corner of Bock-
lage claim, thence south 89 degrees and 45 minutes east
18.62½ chains to corner of Bocklage claim, thence north
45 minutes west 38.20 chains to the southeast corner of
George Hellebusch claim, thence north 88½ degrees west
along south line of George and Benjamin Hellebusch
23.52 chains to southwest corner of Benjamin Hellebusch,
thence north 1½ degrees east 4.24 chains to place of be-
ginning, containing 227.56 acres, more or less, according
to plat thereof made by Jesse F. Ekey, County Surveyor
of Franklin County, Missouri, by Edgar Rapp, deputy,
December 16-20, 1919, recorded in Book 8, page — Sur-
veyor's Record of said county.

Said count then charges that defendants claim to
have a title, estate or interest in said real estate. It con-
cludes with a prayer asking that the title, estate or inter-

est of the plaintiff and the defendants respectively in said real estate, be by the court ascertained and determined; and that the court by its judgment and decree adjudge the title, estate and interest of plaintiff and the defendants in and to said real estate.

Plaintiff charges in the second count of petition, that on April 7, 1919, he was entitled to the possession of the real estate aforesaid; that on April 8, 1919, defendants entered into possession of said premises, and unlawfully withheld from plaintiff the possession thereof to his damage in the sum of five thousand dollars; that the monthly value of the rents and profits of said premises is three hundred dollars. Said count concludes with a prayer for the recovery of said premises, and $5,000 damages for the unlawful withholding of same from plaintiff; and $300 for monthly rents and profits, from the rendition of judgment, until possession thereof is delivered to plaintiff, and for costs, etc.

The answer of said defendants to each count of said petition, alleges in substance, that the boundary line dividing the counties of Warren on the north, and Franklin on the south, is "the middle of the main channel of the Missouri River;" that the real estate described in the petition is on the north side of "the main channel of the Missouri River," and is in Warren County aforesaid; that this action was commenced in Franklin County, Missouri, and the venue removed to Cole County aforesaid; that by reason of the foregoing, the Cole Circuit Court acquired no jurisdiction over the subject-matter of this action; that defendants plead the want of jurisdiction of the Cole Circuit Court, as a bar to any further procedure. Defendants further alleged in said answer, that the land attempted to be described in the petition, is indefinite and uncertain; that the calls in said description are from, and to, points and lines, local and private, without a single call for a point or line based on any public monument, line or survey; that the alleged boundary line dividing Warren and Franklin counties is erroneous, arbitrary and asserted without the semblance of authority to support said contention; that the de-

scription of said land in the petition is so indefinite and uncertain, appellants do not know, and cannot determine, whether plaintiff is attempting to describe the land or a part thereof which defendants claim to own and are in possession of; that the only tract of land which defendants do own and are in possession of, lies in Township 45 N., Range 2 west of the 5th P. M., an accurate description of which is hereafter set out. Defendants in said answer deny that plaintiff has any interest in the lands hereafter described and claimed by them. They further allege that through their immediate, mesne and remote grantors and ancestors, they are now, and have been, in the open, notorious and continuous adverse possession of the lands hereafter described, claiming ownership of same, as against the world, commencing with the year 1834, when the United States issued a patent or patents to one Alexander McKinney; and defendants plead said possession for more than ten years as a bar against this action. Defendants further allege in said answer, that the only land which they claim to own and hold possession of, lying in Township 45 N., Range 2 west of the 5th P. M., is in Warren County, Missouri, and described as follows:

A tract of land containing 58.37 acres situated in the northwest fractional quarter of Section 27, Township 45 north, Range 2 west, bounded as follows: Beginning at a concrete block with a two-inch pipe in the center thereof, the same marking the common corner to Sections 21, 22, 27, and 28, running thence S. 1 deg. 0' W. with the section line 1.70 ch. to a ¾ inch rod set at the intersection of the north line of U. S. Survey No. 1697 with the said section line; running thence with the north line of said Survey No. 1697, S. 57 deg. 0' E. 34.41½ ch. to buggy axle marking the northeast corner of aforesaid survey; running thence with the east line of said Survey S. 32 deg. 46' W. 26.10½ ch. to a set gate hinge; thence east 15.20 ch. to a set post; thence N. 0 deg. 50' E. 42.50 ch. to a 1 inch rod set on the north line of aforesaid Section 27, running thence west with the section line 30.60 ch. to the point of beginning.

A tract of land containing 192.13 acres situated in the southwest part of Section 27, Township 45, north, Range 2 west, and bounded as follows: Beginning at an axle 2 inches in diameter set at the common corner to Sections 27, 28, 33 and 34; running thence N. 1 deg. 0' E. with the section line, 14.98 ch. to a buggy axle set at the intersection of the east line of U. S. Survey No. 1697, with the said section line; running thence with the east line of said Survey N. 32 deg. 46' E. 29.37 ch. to a set gate hinge; thence east 38.69 ch. to a set post; thence south 37 ch. to a set ½ inch rod; thence west 18.62 ch. to a set railway rail coupling; thence south 2.67 ch. to a set buggy axle on the south line of above said Section 27, 5 ch. w. of the quarter section corner; running thence with the section line west, 36.24½ ch. to the beginning.

A tract of land containing 33.65 acres situated in the northwest quarter of Section 34, Township 45 north, Range 2 west, bounded as follows: Beginning at an axle 2 inches in diameter, set at the common corner to Sections 27, 28, 33 and 34 of above said township and range; running thence with the south line of Section 34, east 36.24½ ch. to a set buggy axle; thence south 22.37½ ch. to a set ½ inch rod; thence N. 51 deg. 37' W. 28.22 ch. to a set 1 inch square iron bar; thence N. 70 deg. 54' W. 14.98 ch. to the beginning.

It is further alleged in said answer that these defendants are the children and heirs of Heinrich Feldmann, deceased, and inherited the above described land from him; that said land was conveyed to said Heinrich Feldmann in 1870, for $14,000, which was paid by him to his grantors; that he went into immediate possession of said land, and since said date said Heinrich Feldmann and these defendants have been in the continuous, actual, open and notorious possession, claiming the same against all the world, and paying taxes thereon to Warren County and the State of Missouri; that if the whole, or any part, of said land attempted to be described in plaintiff's petition, is identical with any, the whole, or any part of above described tract of land (which defendants are unable to determine on account of the vague and indefinite de-

scription of the land in the petition) then defendants
plead possession as above set forth for more than ten
years as a bar against this action. It is further alleged
in said answer that the lands described therein were
patented in the year 1834, by the United States to Alex-
ander McKinney, and have come down from that date,
through mesne conveyances to Albert Powell, who, in
1870 conveyed the same to said Heinrich Feldmann; that
said land is situated on the north side of the middle of
the main channel of the Missouri River, and is, and al-
ways has been, a part of Warren County, Missouri; that
it was assessed for taxes as a part of said Warren Coun-
ty; and that since 1870, these defendants and their prede-
cessors in title, have paid taxes to and in Warren County,
Missouri, etc.

The answer, after following the above with a gen-
eral denial, concludes with a prayer, in which the trial
court was asked to enter a decree in their behalf, etc.

The plaintiff, by way of reply, put in issue the new
matter set up in said answer.

The testimony, as disclosed in the abstract of record,
covers about 300 pages of printed matter, aside from
certain exhibits offered in evidence. Plaintiff's claim of
title to the land described in the petition is based on a
patent issued to him on April 7, 1919, by the County
Court of Franklin County, Missouri. It appears from
respondent's evidence that the County Court of Frank-
lin County, on November 14, 1913, made and entered of
record an order for a survey of accreted lands in said
county, occasioned by the abandonment of the waters of
the Missouri River therein as provided in Section 8036,
Revised Statutes 1909. Upon a return of the surveyor,
the county court of Franklin County, acting under the
provisions of the Act approved April 8, 1895, sold to
plaintiff at $1.50 per acre the lands described in the
patent issued by said county to plaintiff as aforesaid.
The defendants claim title to the lands described in their
answer, through patents issued by the United States to
their predecessors in title in 1834, which said patents
were read in evidence. Whatever title was conveyed by

said patents, by mesne conveyances, etc., passed to these defendants. The evidence of the latter discloses that they have been in possession of the land claiming title thereto adversely to the world since 1870. The second count of the petition alleges that the defendants, on April 8, 1919, entered into the possession of the land described in the petition, and have unlawfully withheld from plaintiff the possession thereof.

Both plaintiff and defendants waived a jury and tried the cause before the court. The trial court, as a matter of law, declared that plaintiff was entitled to recover, refused all of defendants' instructions, and rendered judgment for plaintiff upon both counts of the petition, etc.

Defendants' motions for a new trial and in arrest of judgment were filed and overruled and the cause duly appealed by them to this court.

Such other matters as may be deemed important will be considered in the opinion.

I.   This is an action at law as to both counts of petition, and was tried as such in the court below without a jury. If there was substantial evidence offered at the trial showing jurisdiction of the subject-matter in the Cole Circuit Court, and that the land in controversy belonged to respondent, it would be our duty to affirm the judgment, unless error was committed by the trial court in the admission or rejection of testimony, or in respect to the giving or refusal of instructions. [Barr v. Stone, 242 S. W. l. c. 663 and numerous cases cited.]

Substantial Evidence.

II.   The petition charges that the lands in controversy are located in Franklin County, Missouri. The answer tenders an issue on this question, and alleges that said lands are in Warren County, Missouri. The burden of proof devolved upon plaintiff to show that said lands were located in Franklin County, when this action was brought. In other words, if the lands in controversy are located in

Jurisdiction: Wrong County.

Warren County, the Circuit Court of Franklin County was without jurisdiction to try this cause, and of course could confer no jurisdiction on the Cole Circuit Court by changing the venue. [Sec. 1179, R. S. 1919; Sec. 1753, R. S. 1909; Vogelsmeier v. Prendergast, 137 Mo. 271, l. c. 287-8; State ex rel. v. Baker, 129 Mo. l. c. 488.]

The boundaries of Warren County were defined by Section 44, at page 194, of the General Statutes of 1865. This section appears as 44, in Volume I of Wagner's Statutes of 1872, at page 366. The boundaries of Franklin County were defined by Section 66, at page 200 of the General Statutes of 1865. This section appears as 66, in Volume I of Wagner's Statutes of 1872, at page 374. The boundaries of said counties as disclosed by Sections 44 and 66 of the General Statutes 1865, read as follows:

"Sect. 44. WARREN—Beginning at a point in the middle of the main channel of the Missouri River, where a southern prolongation of the fifth principal meridian would intersect the same; thence north on said meridian line, to the northeast corner of township forty-seven, range one, west; thence west on the township line between townships forty-seven and forty-eight, to the southeast corner of section thirty-five, township forty-eight, range two, west; thence north with the subdivisional lines, to the northeast corner of section fourteen, township forty-eight, range two, west; thence west with the subdivisional lines, to the northwest corner of section eighteen, township forty-eight, range two, west; thence north on the range line between ranges two and three, west, to the northeast corner of section twenty-five, township forty-nine, range three, west; thence west with the subdivisional lines, to the northwest corner of section twenty-eight, township forty-nine, range three, west; thence south with the subdivisional lines, to the southwest corner of section nine, township forty-seven, north, range three, west; thence west with the subdivisional lines, to the northwest corner of section eighteen, township forty-seven, range four, west; thence south with the range line between ranges four and five, west, to the middle of the main channel of the Missouri River; thence

down said river, in the middle of the main channel there-of, to the place of beginning.

"Sect. 66. FRANKLIN—Beginning at a point in the middle of the main channel of the Missouri River, where the prolongation north of the range line between ranges two and three, east, would intersect the same; thence south with the said range line, to the southeast corner of township forty-three, range two, east; thence, in a direct line, to a point sixteen chains north of the quarter section corner on the line between sections fourteen and fifteen, in township forty, range two, east, it being the northeast corner of Washington County; thence due west, to the middle of range four, west; thence north with the subdivisional lines, to a point in the middle of the main channel of the Missouri River; thence down said river, in the middle of the main channel thereof, to the place of beginning."

The above quoted sections were in full force and effect when our present Constitution went into operation on November 30, 1875. Section I of Article 9 of above Constitution reads as follows:

"The several counties of this State, as they now exist, are hereby recognized as legal subdivisions of the State."

Section 3 of Article 9 supra, provides that:  .  .  . "No county shall be divided or have any portion stricken therefrom without submitting the question to a vote of the people of the county, nor unless a majority of all the qualified voters of the county or counties thus affected, voting on the question, shall vote therefor."

Section 4 of Article 9 aforesaid reads as follows: "No part of the territory of any county shall be stricken off and added to an adjoining county without submitting the question to the qualified voters of the counties immediately interested, nor unless a majority of all the qualified voters of the counties thus affected, voting on the question, shall vote therefor."

According to our conception of the law, when the Constitution went into operation on November 30, 1875, it then definitely fixed the boundary line between War-

ren and Franklin Counties, which could not be changed
except by a majority of the qualified voters of the coun-
ties immediately interested, etc., voting therefor.   Un-
less it therefore appears from the evidence, that on
November 30, 1875, the land in controversy was located
on the south side of the middle of the main channel of
the Missouri River, as described in Section 66, at page
200, of General Statutes of 1865, the Circuit Court of
Franklin County was without jurisdiction to try this
cause and, hence, conferred no jurisdiction on the Circuit
Court of Cole County, Missouri, by changing the venue.

The respondent recognizes the law as above de-
clared, under proposition three at page 9 of his brief,
which reads as follows:

"When the middle of the channel of a navigable (or
other) river is by law made the boundary line of lands,
and afterwards by avulsion a new channel is made, then
even though the new channel becomes the main channel,
the boundary line remains in the middle of the channel
in which it was established, even though the waters of
the river depart from that channel leaving it dry land.
[Missouri v. Kentucky, 11 Wall. 395, cited in State of
Washington v. State of Oregon, 211 U. S. 127 and 214 U.
S. 205; State of Nebraska v. Iowa, 143 U. S. 359 and
145 U. S. 519; Missouri v. Nebraska, 196 U. S. 23.]"

Counsel for respondent cite Section 3 of Article 9
of the Constitution of 1875, heretofore quoted, and rely
upon same to show that the present boundary of the Mis-
souri River should not be taken as the boundary between
Warren and Franklin counties.

Appellants in their brief, quote the above Sections
1, 3 and 4 of Article 9 of our Constitution, and claim that:
"The boundary line, between Warren and Franklin
counties, at the date of the adoption of the present Con-
stitution, was 'the middle of the main channel of the Mis-
souri River.'" This line has never been changed, in the
manner provided by the Constitution; nor in any other
way.

In State ex rel. v. Baker, 129 Mo. l. c. 486-7, GANTT,
J., in declaring a statute unconstitutional which under-

took to establish the boundaries between New Madrid and Mississippi counties, said:

"It has been suggested in this connection that the provision of the Constitution of 1875, found in Section 1 of Article 9, may have the effect of validating this originally futile effort to change the boundary line between New Madrid and Mississippi counties. That section is as follows: 'The several counties of this State, as they now exist, are hereby recognized as legal subdivisions of the State.'

"Exist, how? Unquestionably as they existed at that date by virtue of the laws of the State, not by invalid and void enactments on the statute books."

We have carefully read the abstract of record and briefs in this cause; and have likewise examined the exhibits offered in evidence. Upon a consideration of all the facts, we have reached the conclusion that no substantial evidence was offered or produced in the case, showing that the lands described in the petition were on the south side of the middle of the main channel of the Missouri River between Warren and Franklin counties, on the 30th day of November, 1875, when the present Constitution went into operation. [In re Lankford Estate, 272 Mo. 1, 197 S. W. 147.] In other words, the plaintiff has failed to prove the allegations of his petition to the effect that the lands in controversy are in Franklin County, Missouri. The plats offered in evidence relating to surveys made in 1879, 1883, 1895 and other years, do not show that on November 30, 1875, when the Constitition became effective, the lands described in the petition were then located in Franklin County, Missouri. It cannot be presumed that the middle of the main channel between Warren and Franklin counties remained in 1879 and other years as it was at the time of the adoption of the Constitution.

In one of the cases relied on by respondent, to-wit, Vogelsmeier v. Prendergast, 137 Mo. 1. c. 277, GANTT, J., in discussing the channel of the Missouri River in 1875, between St. Charles and St. Louis counties, said:

"The location remained practically the same until 1875, when a very marked change occurred in the course and location of the main channel of the river at the point in question.

"So strong was the force of the current against Case Island, located just above Holmes Island, that Case Island was entirely washed away. The removal of Case Island left the St. Charles County shore above Holmes Island more exposed to the swift action of the current. The result was that in 1875 the river cut away about one hundred and fifty acres from the north side of Holmes Island and about fifty acres from the lower end thereof, leaving about one hundred acres. At the same time the sinuous and insatiable stream was swallowing at huge gulps the valuable lands on the St. Charles shore, and in that year completely shifted its channel from the south or St. Louis County side of Holmes Island to the north or St. Charles County side of said island. The river, having thus cut itself a new channel, entirely abandoned its old bed, which had existed at the head of Holmes Island and between the south shore thereof and St. Louis County on the south, as it was shown in Diagram 2."

The above observations in respect to the river in 1875, disclose the necessity of proof, as to the middle channel of same between Warren and Franklin counties on November 30, 1875. It is possible that plaintiff may be able to make the above proof, and show that the land described in the petition was located in Franklin County on November 30, 1875, and, hence, the cause is remanded for a new trial.

III. At the trial of this case, the court below admitted in evidence, over the objection of defendants, the record and proceedings of the Circuit Court of St. Louis County, Missouri, in the case pending therein on change of venue from Franklin County, Missouri, wherein said Elias W. Northstine, the respondent herein, was plaintiff and Warren County, Missouri, was defendant. The appellants in this action were not parties to said cause, nor do they claim title to the

Res Adjudicata.

lands in controversy under either Northstine, Warren County or Franklin County. On the contrary, appellants claim title to said lands under and by virtue of patents issued by the United States in 1834 to Alexander McKinney, through whom they deraign title by mesne conveyances.

It is not claimed that the defendants herein participated in the trial of above cause in the St. Louis Circuit Court, nor that they even knew of said litigation. In a re-trial of the issue, as to whether the lands described in petition were in Franklin County on November 30, 1875, when the Constitution became effective, the record and proceedings in the case of Northstine v. Warren County, supra, should be excluded as evidence in respect to said issue. [Henry v. Woods, 77 Mo. l. c. 280-1; Quigley v. Mexico Southern Bank, 80 Mo. l. c. 296; Atkison v. Dixon, 96 Mo. l. c. 587; State ex rel. v. Johnson, 123 Mo. l. c. 54-5; State ex rel. Subway Co. v. St. Louis, 145 Mo. l. c. 567-8; Womach v. St. Joseph, 201 Mo. l. c. 490.]

In State ex rel. Subway Co. v. St. Louis, 145 Mo. 567, BURGESS, J., after reviewing the authorities relating to above subject, said: "It is manifest that the parties to the two suits in question are not the same. Respondents were strangers to the first suit, and none of them were necessary parties thereto, or privy to any party to that suit. Nor does it appear that the respondents or any of them participated in the trial of that suit, or that they were in any way connected with its management. Our conclusion is that the judgment in that case is not *res judicata.*"

The other authorities cited are to the same effect.

IV. If it should be found upon a re-trial of the case, that the lands in controversy were located in Franklin County, Missouri, on November 30, 1875, the court, in

Accretions. passing upon the merits of the case, should keep in mind the law as declared by this court in Vogelsmeier v. Prendergast, 137 Mo. l. c. 288-9, where we said:

"The court was amply justified by the evidence in finding that in 1875 there was an abrupt and violent change of the river from its old bed and the making of a new channel, and that this change did not effect a change of the boundary between the two counties. The abandoned river bed lies between the island and the land in suit. This old bed still bounded plaintiff's land on the island and the sudden avulsion did not extend plaintiff's bounds beyond the north edge of that abandoned bed. [Rees v. McDaniel, 115 Mo. 145; Cooley v. Golden, 117 Mo. 33; Naylor v. Cox, 114 Mo. 232.]

"The first instruction for plaintiff is clearly erroneous. It asserts the doctrine that if one own the land in a given survey, being an island in a navigable river, and a portion of said survey is entirely washed away, giving place to the channel of the river, and at any subsequent period new land be formed within the area of the original survey and away from the main shore or the remainder of the survey and not as an accretion thereto, such new made land will become the property of the owner of the island. Such is not the law in this State. When a navigable stream forms a boundary, as in case of this island, his line extends to the water's edge, and not to the center of the stream. If part be washed away the river still remains his boundary. He loses the land that is washed away. He can only extend his boundaries by gradual accretion or gradual reliction, just as other riparian owners. He cannot claim new made land which is not an accretion merely because it forms within the lines or area of his original survey. This must now be considered settled in this State. [Naylor v. Cox, 114 Mo. 232; Cooley v. Golden, 117 Mo. 33.]"

V. Upon a re-trial, the court should ascertain and determine definitely, whether the lands sued for, and described in petition, are the same lands described in appellants' answer and claimed to be owned and controlled by them. If it cannot be determined from the pleadings, whether the same lands are described in the petition and answer, the court

*Determining Lands.*

should call upon plaintiff and defendants to clarify this issue and, if necessary, appoint a competent surveyor or engineer to investigate the facts and report to the court.

VI.    For the reasons heretofore assigned, we reverse and remand the cause for a new trial to be proceeded with, in conformity to the views heretofore expressed.    *Reeves* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.    All of the judges concur.