ELIAS W. NOTHSTINE, Appellant, v. CATHERINE FELDMANN ET AL.—
8 S. W. (2d) 912.

Division One, July 3, 1928.

*John W. Booth, Wm. C. Irwin* and *Jesse H. Schaper* for appellant.

502

*Ras Pearson* for respondents.

504

SEDDON, C.—This cause is here upon a second appeal. The action was originally commenced on May 15, 1920, in the Circuit Court of Franklin County, and thereafter the venue was changed to the Circuit Court of Cole County, where a trial of the action before the latter court, sitting as a jury, resulted in a judgment for plaintiff.

Upon appeal to this court, the judgment *nisi* was reversed and the cause was remanded to the Circuit Court of Cole County for a new trial, to be proceeded with in conformity to the views expressed in an opinion of Division Two of this court. [Northstine v. Feldmann, 298 Mo. 365.]

The petition, as originally filed, was cast in two counts, the first count being one to try and determine the title to approximately 227.56 acres of land, specifically described by metes and bounds, and alleged to be situate in Sections 26 and 27, Township 45, Range 2, in Franklin County, Missouri, and the second count being in ejectment for possession of the described land, together with damages for the unlawful withholding of possession thereof, and for monthly rents and profits. Prior to the second trial of the action, the petition was amended by adding two additional counts thereto, the third count seeking a decree in equity ascertaining, determining and defining, by survey or otherwise, the northern boundary of Franklin County and also the boundary between the tracts of land claimed by plaintiff and defendants, respectively, and the fourth count seeking a decree in equity ascertaining and defining the precise boundaries of the land claimed by plaintiff and specifically described in the first and second counts of the petition, adjudging plaintiff to be the owner thereof and to be entitled to possession of same, and to cause suitable and durable monuments to be fixed so as to locate permanently the precise boundaries of the tract of land in controversy.

The answer of defendants is a general denial of the allegations of each count of the petition; a plea to the jurisdiction of the circuit courts of Franklin and Cole counties, respectively, predicated upon the claim of defendants that the land in controversy is now, and always has been, situate in Warren County, and not in Franklin County, Missouri; an averment of adverse possession by defendants of the described land for ten, and for more than twenty, years; and an averment of ownership, by virtue of patents from the United States and mesne conveyances of record, of certain described lands (alleged to be included in the lands described in plaintiff's petition) situate in Warren County, Missouri. The reply is a general denial of the averments of the answer.

At the commencement of the trial, plaintiff requested the trial court, sitting as a court of equity, to try the cause upon the issues in equity presented by the third and fourth counts of the amended petition, which request was refused by the trial court. The cause was thereupon tried to a jury upon the first and second counts of the amended petition, in accordance with the directions and views expressed by Division Two of this court in Northstine v. Feldmann, supra (298 Mo. 365), resulting in the following verdict: "We, the

jury, find the issues in favor of the defendants and find that all of the lands in question were north of the main channel of the Missouri River on November 30, 1875.'' Judgment was entered in favor of defendants and against the plaintiff, in accordance with said verdict, and after unsuccessful motions for a new trial and in arrest of judgment, plaintiff was allowed an appeal to this court.

Plaintiff's claim of title to the lands in controversy, and of the right to possession thereof, is bottomed upon two patents, dated, respectively, May 6, 1915, and April 7, 1919, and issued by the County Court of Franklin County, conveying to plaintiff the lands in controversy as island, or river bed, lands and accretions thereto, pursuant to the provisions of an act of the General Assembly, approved on April 8, 1895 (Laws 1895, p. 207; R. S. 1919, secs. 7029-7032), and acts amendatory thereof, for a consideration of $1.50 per acre, paid by plaintiff into the treasury of Franklin County. The defendants are the descendants and heirs-at-law of Heinrich Feldmann, deceased, and claim title under patents from the United States to Alexander McKinney, issued during the years 1835 to 1837, and by mesne conveyances from Alexander McKinney to said Heinrich Feldmann, who acquired title by warranty deed, dated March 1, 1870, from Albert Powell, a remote grantee of said McKinney, for a purported consideration of $14,341.75. The said patents, and the several mesne conveyances, under which defendants claim title, describe the land here in controversy as being situate in Warren County, Missouri.

The evidence herein discloses that surveys of the lands along the north and south banks of the Missouri River were made under the authority of the United States Government on or about the year 1817, and that the surveys so made extended only to, and terminated with, the respective banks of the river as they then existed. The result of those Federal surveys is that, when the section lines of the surveys are extended across the channel of the Missouri River as it existed in 1817, the respective corners of the sections in Township 45, Range 2, as the lines of the survey were made in Warren County, are approximately one-half mile east and one-half mile north of the respective corners of the same sections according to the lines of the survey as made in Franklin County. Consequently, lands situate in Warren County have uniformly been described and conveyed according to the lines of the Federal survey made on the north side or bank of the Missouri River, whereas lands situate in Franklin County have uniformly been described and conveyed according to the lines of the Federal survey made on the south side or bank of said river. The testimony of engineering witnesses educed on the trial was to the effect that, while the lands in controversy and claimed by the respective parties, plaintiff and defendants, are differently

described in the respective pleadings of the parties, nevertheless, for all practical purposes, and so far as the present action is concerned, the several different descriptions include the same and identical land in controversy.

Plaintiff's evidence tends to show that in the year 1875, and for several years prior thereto and thereafter, there existed a large body of land, about one mile in width, situated on the south side of the Missouri River, and extending east and west for a distance of approximately four miles, which was sometimes called Shelton's Island, and was also commonly known as Boeuf Island, taking the latter name from Boeuf Creek, a stream which had its source in the hills and bluffs of Franklin County and which emptied into a slough, or abandoned arm of the Missouri River, at a point south of, and relatively close to the easterly end of, said island. The slough on the south side of Boeuf Island, separating that body of land from the main body of Franklin County, was approximately seventy-five to one hundred feet wide, and was generally dry, except in times of flood and extremely high water, when some of the waters of the Missouri River flowed through the slough. In 1883, which was the year of a big flood, the waters of the Missouri River broke through the west or upper end of the narrow slough on the south side of Boeuf Island, since which year some of the waters of the river have flowed continuously through the slough. For some years prior to the year 1883, the main waters or channel of the Missouri River cut across above the head, or upper end, of the slough and followed a course along the west and north sides of Boeuf Island, flowing, for a considerable period of time, between the lands of Heinrich Feldmann, defendants' ancestor, and Boeuf Island. It is the theory of plaintiff, and plaintiff's evidence tends to show, that, for the period of twenty-five years between 1870 and 1895, the main channel, or channel of navigation, of the Missouri River gradually and imperceptibly widened from the south to the north for a distance of approximately one and one-half miles, and that the erosive action of the waters of the main channel of the river gradually, imperceptibly and insensibly cut away, and swallowed up into the voracious maw of the river, all of the lands of Heinrich Feldmann, except only a few acres thereof (not involved herein) contiguous to the high bluffs on the north, or Warren County side, of the river; that the lands of Heinrich Feldmann so washed away and swallowed up by the gradual and erosive action of the waters of the river were supplanted by the main channel of the river, the north or left bank of which main channel became extended to a distance of only 300 or 350 feet from the foot of the bluffs in Warren County. The deepest place in the main channel of the Missouri River, according to plaintiff's evidence, was opposite the village or town of Peers, a station on

the Missouri, Kansas and Texas railroad, which lies at the foot of the bluffs in Warren County, approximately a mile and one-half or two miles north of the original north side of Boeuf Island.. Plats and surveys made by the United States Government engineers in the years 1879, 1890, and 1895, and put in evidence by plaintiff, show the main channel of the Missouri River during those respective years to have been north of Boeuf Island, and those plats tend to evidence the gradual encroachment of the main channel of the river from the south northwardly toward the bluffs of Warren County during the period between 1879 and 1895. Plaintiff's evidence tends to show that steamboats regularly plied such channel of the Missouri River until the year 1895. Plaintiff's evidence also tends to show that towheads and sand bars formed in the channel of the river north and west of Boeuf Island; that willows and other vegetation took root and grew upon the towheads and sand bars, and that alluvium was caught and deposited thereon, so that such towheads and sand bars gradually and imperceptibly enlarged, became united, and formed the body of the land in controversy, which has gradually extended to the south and has eventually become joined to the original Boeuf Island; that, in the year 1895, by an avulsion, or sudden change in its course, the Missouri River cut a new channel through the old slough south of Boeuf Island, which channel has widened, and from that date became the main channel, or channel of navigation, of the Missouri River, and which channel was about one mile wide at the time of the trial of the present action; that, after the year 1895, the waters of the former main channel of the river, north of Boeuf Island, receded from the foot of the bluffs in Warren County, leaving a slough, some ten to fifteen feet in depth and approximately 100 yards, or more, in width, which slough lies at the foot of the bluffs in Warren County, and which marks the north boundary of the course or bed of the main channel of the river prior to 1895, the year of the alleged avulsion. In 1913, the County Court of Franklin County, claiming the lands lying between said slough on the north and the original Boeuf Island on the south to be accreted lands and lands formed by the recession and abandonment of the waters of the Missouri River, caused Boeuf . Island to be resurveyed, and the claimed river bed lands to be surveyed and sectionized, and caused a survey to be made and monuments to be placed in an endeavor to mark and establish the middle of the main channel of the Missouri River as it supposedly existed immediately prior to the alleged avulsion, or change in the course of the main river channel, in the year 1895, pursuant to the provisions and requirements of the act of the General Assembly, approved on April 8, 1895. [Laws 1895, p. 207; R. S. 1919, secs. 7029-7032.] Thereafter, the lands in controversy were sold to plaintiff by the County Court of

Franklin County as river bed lands, and patents thereto were issued to plaintiff by Franklin County, which patents constitute plaintiff's claim of title and ownership.

Defendants, following what they understood and conceived to be the directions of Division Two of this court as expressed in the opinion of that division in the case of Northstine v. Feldmann, 298 Mo. 365, sought to show, by their evidence on the second trial, the location of the middle of the main channel of the Missouri River as the same existed on November 30, 1875, the date of the taking effect of the present Constitution of this State, and that the middle of the main channel of the Missouri River at that date lay entirely south of the lands in controversy, and between the lands in controversy and the original Boeuf Island. Defendant H. H. Feldmann, a son of Heinrich Feldmann, testified that a considerable portion of the lands owned by his father was washed away by the Missouri River, but that "*it left some in the bottom* and left some on the hills, and *it didn't all wash away.* . . . It just kept falling in gradually, every year more; every year more was washed away until it quit, *until it left the rest of it*, and went to Boeuf Island;" and that, after the river changed its course and went south of Boeuf Island, the land of Heinrich Feldmann "filled up again, built up; *it formed from both sides; it filled up from both sides.*" Defendants' witness, Glosemeyer, testified respecting the action of the river upon the Feldmann lands: "*It didn't wash it all away;* it washed on the farm land; it washed until up in eighty somewhere, I think, until it stopped altogether. . . . It washed away and it came back in the course of years. As well as I remember, it was either ninety-seven or ninety-eight. Feldmann had the land surveyed again, and old man Feldmann built him a house—I think that was in ninety-seven—on the south end of this land."

At the conclusion of the evidence, plaintiff requested the court to peremptorily instruct the jury that the defendants had shown no title to the lands in controversy, and that, under the law and the evidence, their verdict must be for the plaintiff, which peremptory instructions were refused by the trial court.

At the request and on behalf of defendants, the court gave to the jury certain instructions, lettered "F", "G", "H", and "I", which, in substance, told the jury that "the sole question for you to decide is where the middle of the channel of the Missouri River was on November 30, 1875, and whether the land in question was north or south of the main channel on that date," and, furthermore, that "it does not make any difference what changes, if any, may have taken place or been made in the channel of the river since then, or whether or not any or all of the lands in question were afterwards washed away; or whether or not the lands in question are new lands

or accretions to the old lands; you are not concerned with any changes whatever that may have been made by the river, or the channel thereof, after November 30, 1875; so far as that issue in this suit is concerned, it makes no difference if the river, after November 30, 1875, washed all of the defendants' lands away; it makes no difference if the river washed all the lands north of Boeuf Island away after November 30, 1875; it makes no difference what the character of the soil composing defendants' lands is; the sole question for you to determine is whether or not the place where the lands in question are located is north of the place that was the middle of the channel of the Missouri River as it was on November 30, 1875; if it is north of that place, the plaintiff cannot recover and your verdict must be for the defendants.''

The court refused certain instructions, requested by plaintiff, to the effect that ''newly-formed islands and abandoned river beds, together with accretions thereto, belong to the State of Missouri, and were, by legislative enactment, conveyed to the respective counties in which they might be situated; and if the jury find and believe from the evidence that, prior to November 30, 1875, the Missouri River was flowing north of Boeuf Island and against the lands of defendants' ancestor, and that the river gradually moved northward by eroding the banks upon its northern shore line and by filling in upon its southern shore line until it had removed all of the land (in controversy) formerly owned by defendants' ancestor, and that the river thereafter, about the year 1895, cut a new channel on the south side of the Missouri River bottom and abandoned its former bed along the northerly shore line, and that the land in controversy was a part of said abandoned river bed, such change of channel did not change the boundary line between Franklin and Warren counties, and, notwithstanding the change of channel, the boundary line between said counties continued to be the middle of the main channel of the river as it was located at the time of said abandonment; and if the jury find and believe that the land in controversy was a part of said abandoned river bed, lying and situate south of the county line between Franklin and Warren counties as it was located at the time when the river abandoned its former bed, and that thereafter the plaintiff purchased the same from Franklin County and received a conveyance thereof from said county, then plaintiff acquired a good title to said lands, notwithstanding the said lands may have been formed on the bed of the river at a place which was once owned in fee simple by defendants, or their grantors, and the verdict of the jury must be for plaintiff and against defendants, provided you find that said land was south of the middle of the main channel of said abandoned river bed as it existed at the time of its abandonment.''

Responding to the instructions of the trial court, given on behalf

and at the request of defendants, the jury returned a unanimous verdict, finding the issues in favor of the defendants, and finding that "all of the lands in question were north of the main channel of the Missouri river on November 30, 1875."

Plaintiff and appellant assigns error in the giving of the instructions aforesaid on behalf of defendants, and in the refusal of the instructions aforesaid requested on behalf of plaintiff.

It is apparent that the learned trial court, in submitting the cause to the jury upon the instructions requested by defendants and in refusing the instructions requested by plaintiff, acted in accordance with the directions of Division Two of this court announced in Northstine v. Feldmann, 298 Mo. 365. That decision of Division Two ruled that the boundary lines between the several counties of the State, as they existed on November 30, 1875, the date on which the present Constitution of this State became operative and effective, were inexorably fixed as of the date said Constitution became operative, except as thereafter changed at and by an election of the qualified voters of the counties immediately interested. This court, en banc, has recently overruled the decision of Division Two in the Northstine case, to the extent of the ruling and holding just referred to, in the case of State ex inf. v. Hoffman, 318 Mo. 991, 2 S. W. (2d) 582, decided on February 4, 1928. Since the decision of this court, en banc, in the Hoffman case, supra, our own division of this court has followed the late ruling of the court, en banc, in two cases decided at the present term of this court. [Akers v. Stoner, 319 Mo. 1085; Jacobs v. Stoner, 319 Mo. 1093.] In the Hoffman, Akers, and Jacobs cases, supra, we have lately ruled that the Constitution of 1875 did not supersede the rules and principles of the common law (in force in this State at the time of the adoption and taking effect of our present Constitution) that gradual, imperceptible and insensible changes in the course, or channel, of a river work corresponding changes in boundary lines marked by the river channel; but, on the other hand, where a river or stream which is a boundary, by avulsion suddenly abandons its old and seeks a new bed or channel, such change of channel works no change of boundary, and the boundary remains as it was, in the middle of the old or abandoned channel, although no waters may be flowing therein. Our late ruling in the cases last cited is amply supported by judicial authority. [Gould on the Law of Waters (3 Ed.) sec. 159; Nebraska v. Iowa, 143 U. S. 359; Missouri v. Nebraska, 196 U. S. 23; Cooley v. Golden, 52 Mo. App. 229; Vogelsmeier v. Prendergast, 137 Mo. 271.] The statute of this State in force at the time of the adoption and taking effect of the Constitution of 1875 (now Sections 9334 and 9356, R. S. 1919) made "the middle of the main channel of the. Missouri River" the boundary between Warren and

Franklin counties. Under our late decisions in the Hoffman, Akers, and Jacobs cases, supra, we held that, at common law, such a boundary is more or less migratory, in that such boundary may shift with the gradual shifting of the stream due to imperceptible and insensible changes in its course, or channel, occasioned by accretion and reliction on its banks. If, therefore, by reason of gradual, imperceptible and insensible changes in its course, the main channel of the Missouri River between Warren and Franklin counties has shifted since November 30, 1875, the date of operation of our present Constitution, then such change in the course of the main channel of the river worked a corresponding change in the boundary between said counties; and, if the Missouri River, by avulsion, suddenly abandoned its old or former channel, and sought a new bed or channel, then the boundary between said counties remained as it was before the avulsion, in the middle of the old and abandoned channel.

While the instructions given by the court to the jury on the last trial of the present action were responsive to the directions of Division Two of this court in its decision in Northstine v. Feldmann, supra, such instructions are clearly in conflict with the principles of law as lately announced by this court, en banc, in the Hoffman case, supra, and by this division of this court in the Akers and Jacobs cases, supra, and the giving of such instructions, and the refusal of contra instructions requested by plaintiff, constitute reversible error. While it is to be regretted that this cause must be retried because of error committed by the trial court in response to positive directions given by this court on the former appeal of the cause, yet it is eminently right and proper that we should correct our own manifest error in declaring and announcing the law of the case, and that the cause should be retried according to correct principles of law as declared and supported by controlling juristic authority.

In Mangold v. Bacon, 237 Mo. 496, l. c. 516, 517, our lately departed brother, Judge LAMM, speaking for this court, en banc, in his peculiarly forceful and expressive style, said: "Verily, a court has a natural right to change its own mind. In Padgett v. Smith, 205 Mo. 125, it was pointed out that it was necessary to preserve unimpaired that natural right—one to be guardedly and discriminatingly used in the exercise of a high power. An appellate court is a court for the correction of errors—its own as well as others. In correcting the errors of lower courts we do not proceed on the theory we make none of our own. [Donnell v. Wright, 199 Mo. l. c. 317.] . . . Whether from grace or right, when cogent and convincing reasons appear, such as lack of harmony with other decisions, and where no injustice or hardship would flow from a change, or where, by inadvertence, principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the

.rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

In a later decision, Murphy v. Barron, 286 Mo. 390, 400, this division of this court said: "The decision on the former appeal is not *res adjudicata* in the full sense. [Mangold v. Bacon, 237 Mo. 1. c. 517.] It is not a judgment from which the court cannot legally depart on this second appeal in the same case. Under the decisions in this State it was not an absolute and final determination of all matters decided of such inexorable force that the court must adhere to it on this appeal at all events and whether it be right or wrong. The general rule is that matters decided on one appeal will be considered settled on a second appeal in the same case, unless exceptional circumstances call for a re-examination of them. A discussion of the nature of the exceptional circumstances which warrant a re-examination of questions decided on a former appeal is found in the case above cited." Our own division of this court has adhered to the foregoing rule, or, rather, the exception to the general rule, in a cause just decided at the present term of this court, and not yet officially reported. [Seibert v. Harden, 8 S. W. (2d) 905.]

But appellant insistently urges that, inasmuch as all the facts and circumstances have been fully and exhaustively shown by the evidence, and that no good purpose is to be subserved by putting the parties to the time and expense of another trial and a possible third appeal of the cause, therefore we should reverse the judgment of the circuit court and render such judgment here as should have been rendered by the circuit court, or that we should remand the cause to the circuit court with directions to enter judgment for the plaintiff and against the defendants. It is apparent, however, that defendants proferred their evidence upon the single theory that the middle of the main channel of the Missouri River as it existed on November 30, 1875, was the inexorable, unchangeable and permanent boundary between Warren and Franklin counties, pursuant to the directions of this court on the former appeal of the cause, and that such issue was the sole issue to be tried and submitted to the jury. It is possible that defendants, on a retrial of the action, may be able to offer substantial proof that the main course or channel of the river was not changed in the year 1898 by avulsion, or sudden and violent abandonment of the former channel, but that such change was gradual, imperceptible, and insensible; or, defendants may be able to offer substantial proof that the Feldmann bottom lands were not entirely washed away by the waters of the river and that the land in controversy accreted to their remaining bottom or shore lands, or to other lands whereof they have the legal title, so as to extend their

514

title and ownership to such accreted lands, if any there be. If defendants shall be able to offer substantial proof of such facts, then there will arise a conflict between the proof of defendants and that of plaintiff, and the issue becomes wholly one of fact to be resolved and determined by a jury, unless trial by jury be waived by the parties.

In view of the single theory on which the action was tried below and submitted to the jury, and in further view of the possibility of conflicting proof respecting the facts upon a retrial of the action, we do not feel justified in directing the entry of a judgment in the circuit court, or in entering a judgment here; but we are of opinion that the judgment *nisi* should be reversed for error in the giving and refusal of instructions to the jury, and that the cause should be remanded to the circuit court for another trial of the issues. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.