**Leo H. VOLKERDING, Respondent,**

v.

**Hugo B. BROOKS, his unknown consorts, successors, representatives, assigns, devisees, donees, alienees, or any immediate, mesne or remote voluntary or involuntary grantees, if they or any of them be living, or their, or any of their unknown heirs, consorts, successors, representatives, assigns, devisees, donees, alienees, or any immediate, mesne or remote voluntary or involuntary grantees, if they or any of them be not living, and the unknown wife, if any, of Hugo B. Brooks, and her unknown consorts, heirs, successors, representatives, assigns, donees, devisees, alienees, or any immediate, mesne or remote voluntary or involuntary grantees, Appellants.**

No. 48919.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Frank W. Jenny and James A. Cole, Union, and Theodore P. Hukriede, Washington, for appellant.

Robert Hoelscher, Warrenton and Leo A. Politte, Washington, for respondent.

BOHLING, Commissioner.

Action filed July 18, 1957, by Leo Volkerding in two counts. Count I was in ejectment for possession, damages and rent of certain specifically described Missouri River island land originally lying between the Missouri counties of Franklin and Warren, subject, however, to certain exceptions therefrom belonging to Hugo B. Brooks. Count II was to quiet and determine title in plaintiff to the aforesaid land, exceptions excluded. Defendant Brooks filed answer and, so far as material to this review, set up as to each count title in himself to the land described in plaintiff's petition by adverse possession and also by reason of accretions to certain land owned by him and mentioned in plaintiff's petition, and prayed that Count I of plaintiff's petition be dismissed and, under Count II, that title to the land involved be ascertained and determined to be in said defendant. Plaintiff's reply denied the allegations of the answer setting up ownership in defendant. The

trial court found the issues on both counts in favor of plaintiff; found that plaintiff was entitled to the possession of the land described in his petition, the exceptions excluded, and $1.00 damages, and that plaintiff was the owner of said land and that defendant Brooks had no title or interest therein. Defendant Brooks has appealed.

■ The case was tried to the court without a jury and is reviewable here upon both the law and the evidence. The judgment, however, is not to be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R.; Erickson v. Greub, Mo., 287 S.W.2d 873 [1]. "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." Rule 73.01(b), supra.

■ At the times material here the boundary between Franklin and Warren Counties was "the middle of the main channel of the Missouri River." G.S.1865, p. 200, § 66—Franklin County; G.S.1865, p. 194, § 44—Warren County; Nothstine v. Feldmann, 298 Mo. 365, 375, 250 S.W. 589, 593; Nothstine v. Feldmann, 320 Mo. 500, 511, 512, 8 S.W.2d 912, 916. By acts of the General Assembly, lands belonging to the state and formed by the recession and abandonment of the "old beds of lakes and rivers" in this state, including the area here involved, were granted and transferred to the counties in which such lands were located. Consult Laws 1895, p. 207; Laws 1899, p. 276. Large areas, including that here involved, formerly a part of Franklin County became a part of Warren County by the shifting of the main channel of the Missouri River southward from its north bank to south of said areas; and about 1924 the qualified voters of the two counties changed the boundary between said counties to accord with said change in the river's channel. Consult Mo.Const.1875, Art. 9, §§ 3, 4.

In May, 1914, J. M. Moore, County Surveyor of Franklin County, surveyed the west end of Boueff (sometimes spelled Boeuf) Island for Franklin County, said island being then a part of said county, which survey covered sections 28, 29, 30, 31, 32, and 33 of Township 45, Range 2 West in Franklin County, Missouri, and was recorded in August, 1914, in Vol. 8, p. 230 of the Surveyor's Records of Franklin County.

Thereafter, on January 5, 1915, the County Court of Franklin County, by an "Accreted Land Patent," sold and conveyed, for the consideration of $115.20, to William T. Barrett and Harry L. Barrett, brothers, "all of the South fractional half of the Southeast quarter of Section Thirty, Township Forty-five, Range Two, west; as per plat of survey of J. M. Moore, County Surveyor, recorded in Volume 8, page 230, of Surveyor's Records of Franklin County, Missouri, and containing Seventy-two acres, more or less." This deed was recorded in Franklin County on January 11, 1915, and in Warren County on October 15, 1926.

On July 19, 1956, plaintiff acquired the title of the Barrett brothers by quit claim deed in which the land was described according to the Warren County survey and which deed first described 124.44 acres as being conveyed but, however, specifically excepted therefrom 26.81 acres within said description belonging to defendant Brooks, leaving a total of 97.63 acres, more or less. We understand plaintiff claims the additional 25.63 acres as accreted land to the Barrett "Seventy-two acres, more or less."

Plaintiff's petition describes the land involved as set forth in said quit claim deed, to-wit:

"A certain tract of land laying North of the Missouri River and situated in the Northwest quarter and the Southwest quarter of Section 31 Township 45 North, Range 2 West, Warren County, Missouri. Bounded as follows: Beginning on the West line of said Section 31 a distance of 6.78 chs.

South of the Northwest corner thereof and at the Southwest corner of a 41.56 acre tract belonging to Hugo Brooks. Running thence with the South line of said Brooks tract S. 80 deg. 00' E. 40.67 chs. to the Southeast corner thereof on the quarter section line at a point which is 14.00 chs. South of the North quarter corner of said section 31; thence with the quarter section line South 43.00 chs. to the Missouri River; thence up stream following the meanders of said River Northwestwardly to a point on the West line of said Section 31; thence with the said section line North 19.22 chs. to the place of beginning, containing 124.44 acres, more or less.

"EXCEPTING however, therefrom 26.81 acres belonging to Hugo Brooks and being all of tracts 1 and 2 of accreted lands sold by Warren County to John Steffen on the 6th day of May, 1926, which excepted tracts are described as follows:

"TRACT NO. 1 (Swamp land Record Book—Page 146–147) Part of the Southeast quarter of the Northwest quarter of Section 31 Township 45 Range 2 West, bounded as follows: Beginning at the center corner of said Section 31 running thence North 12.75 chs. to corner; thence S. 80 deg. 56' West 9.34 chs. to stake; thence S. 55 deg. 58' West 12.97 chs. to stake; thence South 4.00 chs. to corner; thence East 20.00 chs. to place of beginning, containing 19.31 acres, more or less.

"Tract No. 2: Part of the Northeast quarter of the Southwest quarter of Section 31, Township 45 Range 2 West, bounded as follows: Beginning at the center corner of said Section 31, running thence West 20.00 chs. to corner; thence S. 69 deg. 27' E. 21.-36 chs. to corner; thence North 7.50 chs. to the place of beginning containing 7.50 acres, more or less."

Defendant Brooks' 26.81 acres, excepted from the land claimed by plaintiff, is bounded on the east by the east line of the northwest quarter of Warren County Sec. 31, the northernmost point being approximately 60 feet south of the land conveyed by Franklin County to the Barretts in 1915, and is at or near the west end of Goose Island, an island south of Boueff Island.

John L. Cochran, a qualified surveyor and registered engineer, prepared a plat, Plaintiff's Exhibit C, based on the Moore survey of May, 1914, for Franklin County, a survey of accreted land north of Goose Island in sections 31, 32 and 33, Twp. 45, Range 2 west, Warren County, surveyed by order of the County Court on December 17 and 18, 1947, by Benj. F. Frick, County Surveyor of Warren County, and deeds.

The United States Government surveys extended only to and terminated with the north and south banks of the Missouri River as said banks existed at the time of said surveys. This gives rise to confusion in the location of the corners and section and other lines in the area involved, in that when the respective corners and section lines of Franklin County are extended across the channel of the Missouri River they do not coincide with the corners and section lines of Warren County. Surveyor Cochran, as a result of said confusion, showed the section numbers, corners and lines of the Franklin County survey in red and of the Warren County survey in black on Plaintiff's Exhibit C. For the practical purposes of this appeal the Franklin County survey corners and lines appear to be approximately one-half mile west and practically a quarter of a mile south of the corresponding corners and lines established by the Warren County survey. This results in showing the northwest quarter of Sec. 31, Warren County, overlapping part of the south half of the southeast quarter of Sec. 30, Franklin County.

Mr. Cochran dug down six feet to find the corners of Sections 28, 27, 34 and 33 for a starting point to show the Franklin County lines on Plaintiff's Exhibit C, and he found the other stones and iron pipes marking the old corners for the section and other lines on said exhibit.

Surveyor Cochran surveyed defendant's 41.56 acres but did not survey any more land. His survey of the 41.56 acres started about 15 feet west of defendant's barn thereon and at the Warren County survey corner of Secs. 30 and 31, thence ran south 447.48 feet along the west line of Sec. 31, thence south 80° 00′ east 2180.6 (2684.22?) feet to the north-south center line of Sec. 31, thence north on said center line to the north line of Sec. 31, thence west along said north line to the point of beginning. Approximately one-half of said 41.56 acres laps over onto the Franklin County fractional one-half of the southeast quarter of Sec. 30 conveyed by Franklin County to the Barrett brothers. Plaintiff makes no claim to that portion of said 41.56 acres so overlapping said Franklin County land; and, we understand, proceeds on the basis that the south line of said 41.56 acres is the north line of plaintiff's land in Franklin County Sec. 30 (Warren County Sec. 31). Cochran testified he was able to locate and plat that portion of Plaintiff's Exhibit C south of said 41.56 acres from the descriptions in the deeds and the plats shown on the records of the surveyors.

Plaintiff's Exhibit C, as we read it, indicates that at the time of surveyor Moore's Franklin County survey about the west two-thirds of the south line of the south fractional half of the southeast quarter of Franklin County Section 30 was the Missouri River. Said exhibit, following plaintiff's description of the land in the first paragraph of his description in his petition, taking the south line of Brooks' 41.56 acres as plaintiff's north line, extends the east line of plaintiff's land from the southeast corner of Brooks' 41.56 acres south on the quarter section line of Warren County Sec. 31 "43.00 chs." (2838 feet) to the Missouri River, thence northwestwardly following the meanders of said River to a point on the west line of Sec. 31, and thence, with said section line, north "19.22 chs." (1268.-52 feet) to the southwest corner of Brooks' 41.56 acres, containing 124.44 acres, more

or less, excepting, however, therefrom the two subsequently described tracts, containing a total of 26.81 acres, belonging to defendant Brooks, describing, as stated, 97.63 acres as plaintiff's land. (Technically, as we read this record, plaintiff's west line should be the west line of the Franklin County conveyance of 1915 to the Barretts, approximately 93 feet east of the west line of Warren County Sec. 31.)

As stated, Cochran only surveyed the 41.56 acres, the south line of which is the north line of the land claimed by plaintiff. While he platted the other points of plaintiff's described land, he did not know whether the southeast and the southwest corners of plaintiff's said land were or were not out in the Missouri River.

A barn, house and other improvements were on defendant's 41.56 acres. There also was testimony that defendant had a levee in 1942 or 1944 on that portion of the 41.56 acres that extended over onto the Franklin County survey of that part of Sec. 30 sold to the Barrett brothers, and that later the Government took the levee over, rebuilding it in practically the same location after the flood of 1951. This levee is shown as "Centerline Levee" on Plaintiff's Exhibit C, and extends some distance east of the 41.56 acres. Said exhibit also shows a slough on said land conveyed by Franklin County to the Barretts, which slough extends northeastwardly across the southeast corner of the 41.56 acres. Part of the south fractional half of the southeast quarter of Franklin County Sec. 30 lies south of said slough.

Defendant Brooks testified his father, who died in 1935, purchased the 41.56 acres in 1905 and moved onto it in 1912; that his father and he had crops, cattle and hogs on the land south of the levee clear to the water's edge; had it fenced clear out to the river's edge; that he had an orchard there for several years, and had posted signs around there. Only the west line of Warren County Sec. 31 was fenced from

defendant's barn south to a sycamore tree at or near the river bank. Plaintiff testified he had seen one "no trespassing" sign on the land involved; didn't know, but had a good idea, who placed it there.

Theodore Meyer, Wilbert Hoeft and Frank Stuermann testified for defendant. Hoeft, between 1936 and 1943, and Stuermann, in 1939 and 1940, worked for defendant. Defendant stresses the testimony of Meyer, stating the other witnesses only testified to his use of the area in isolated years. Meyer testified that he had been well acquainted with Boueff and Goose Islands since 1920; that he remembered that Brooks cultivated the land between the levee and the Brooks barn and house, which were north of the levee; that defendant had a peach orchard and some fence for hogs and cattle south of the levee, and had used that land for threshing. He did not know "of anyone fencing or cultivating" the land south of the Brooks improvements and over to the Missouri River, other than defendant or defendant's father. On cross-examination he stated the orchard was approximately on the levee, on either side of the levee; that the floods came and the fruit trees died, and after that Brooks cultivated only north of the levee, not south of the levee, and there was no cultivation or fences south of the levee after the 1951 flood.

Plaintiff, on cross-examination, admitted that since 1930 defendant or defendant's father had cultivated the land north of the levee, practically the whole of which is shown by Plaintiff's Exhibit C to be included within the boundaries of the 41.56 acres admittedly owned by defendant Brooks. Plaintiff testified, in effect, that, to his knowledge, no one had cultivated the land south of the levee in the last ten years. There was testimony that defendant tried to buy the Barrett land south of defendant's 41.56 acres, defendant testifying he felt he did not then have title to it. The Barretts asked $500. Defendant offered $400, and did not purchase. The record establishes that defendant sued plaintiff to secure a private road across plaintiff's land here involved between defendant's 41.56 acres on Boueff Island and 26.81 acres on Goose Island. Called as a witness by plaintiff in this suit, defendant was asked if he did not testify in 1953 in the road suit as follows: "Mr. Brooks, do you claim any interest in land between your farm proper and the Goose Island slough land? Answer: No, I don't." To which inquiry defendant answered: "I don't remember." Plaintiff thereafter testified that defendant in the road suit had answered: "No, I don't." And to the question: "Do you have possession of it?" answered: "Well, no, not exactly." At the present trial defendant, on cross-examination, testified: "Q. And if you had an interest in that land [the land here involved], wouldn't your land then *leave* [lead?] from the county road clear to Goose Island in one continuous tract? A. Well, yes."

■■■ Among the essential elements of adverse possession are the elements that the possession be hostile, continuous and notorious. Conran v. Girvin, Mo., 341 S.W.2d 75, 90 [14]. The record clearly warranted a finding by the trial court that defendant's possession of the land claimed in plaintiff's petition was not hostile. Kelsey v. City of Shrewsbury, 335 Mo. 78, 71 S.W.2d 730 [3]; Bridal Trail Ass'n v. O'Shanick, Mo.App., 290 S.W.2d 401, 407 [10]. Defendant's case of Peterson v. Harpst, Mo., 247 S.W.2d 663, 668, differs from the case at bar in that the court found the preponderance of the evidence established that defendant entered into adverse possession of the island land and thereafter continuously occupied it to the exclusion of any occupany by the plaintiffs; and there were no admissions against interest on the part of said defendant as in the case at bar.

Defendant's witness Benjamin F. Frick, Warren County Surveyor, testified that at

the time he surveyed Goose Island the Missouri River flowed on both sides of the island, but he did not remember the date of his survey. Theodore Meyer testified that in 1926 the river was flowing on both sides of said island and there was quite a bit of water between Goose Island and the location of the levee. Witness Hoeft testified there was no levee on the 41.56 acres in 1936. Defendant purchased his 26.81 acres (exceptions 1 and 2 described in plaintiff's petition) at the west end of Goose Island about 1936 or 1937. He testified that the high water of 1915 "caved away" the land between his father's house and where the levee now is; that the land formed back slowly; that when he purchased the 26.81 acres the Missouri River channel was south and sloughs or other water was north of Goose Island; that after 1936 or 1937 the area between the west end of Goose Island and the levee would fill in gradually from that slough towards the river, wash away, and then fill back again, and that there was quite a bit of water still in the slough.

Theodore Meyer testified that before the 1951 flood the Government put in a dike to shut the slough off, and ever since the land has been filling in; that it filled in from the Goose Island, the south, side and also from this, the other, side.

William T. Barrett, the survivor of the brothers receiving the Franklin County Accreted Land Patent, testified he had corn along the river in 1913 and 1914; that the river overflowed and most of the corn land caved in but about 25 to 30 acres, on which there was good sized timber, was not cut away and still remains. He was on his land frequently and had been along the Government levee in a rowboat and in a motorboat. He had cultivated to within 200 to 300 yards of the Brooks house and, as we read his testimony, the land never washed away closer than within 400 to 500 yards of the Brooks house. This would leave part of the Barrett land between the south line of the Brooks 41.56 acres shown on Plaintiff's Exhibit C and north of the

river at Goose Island. Giving consideration to the testimony of defendant's witness Meyer that the land filled in from both sides, defendant's attempt to purchase the Barrett land, and his testimony, under oath, in 1953 in the road case that he did not claim any interest in the Barrett land, a finding that the accretions attached to the Barrett land south of defendant's 41.56 acres as well as to the north side and west end of Goose Island is sustained by the evidence.

■ In Missouri a riparian owner owns to the low water mark on navigable streams. Conran v. Girvin, Mo., 341 S.W. 2d 75, 80 [5].

This court stated in Sweringen v. City of St. Louis, 151 Mo. 348, 52 S.W. 346, 349: "It is fundamental in the law of accretions that the lands to which they attach must be bounded by the river or stream to entitle its owner to such increase. * * * In the very nature of things, then, accretions depend upon actual contiguity, without any separation of the claimant's land from the accumulated alluvion by the lands of another, however narrow the intervening strip may be, or whatever the size of the claimant's tract behind it." City of St. Louis v. Lemp, 93 Mo. 477, 479, 6 S.W. 344; St. Louis Pub. Schools v. Risley, 77 U.S. (10 Wall.) 91, 19 L.Ed. 850, 857, affirming 40 Mo. 356; 56 Am.Jur., Waters, § 485. Consult Peterson v. City of St. Joseph, 348 Mo. 954, 156 S.W.2d 691, 694 [7]. From the result reached the trial court found a portion of plaintiff's land intervenes between defendant's 41.56 acres and the Missouri River north of Goose Island.

An annotation in 54 A.L.R.2d 650, § 5, states: "As a corollary of the general rule * * * that the owner of an island in a navigable stream the bed of which is owned by the state is entitled to additions thereto by accretion and reliction, it has been held or recognized that where the accretions to the island meet the mainland or its accretions, or another island or its accretions,

the owner of the island is entitled to all the accretions forming on his shore to the point where they physically meet another shore or the accretions thereto." Buse v. Russell, 86 Mo. 209, 214, states: "It must follow that if the shore lines of two bodies of land, divided by a water course, receive accretions until they come together, the line of contact will be the division line." Cooley v. Golden, 117 Mo. 33, 48, 23 S.W. 100 [2], 105, 106, 21 L.R.A. 300; 56 Am.Jur., Waters, § 497, nn. 11, 12. Consult Curry v. Crull, 342 Mo. 553, 557(1), 116 S.W.2d 125 [2], 126.

■ There was testimony that the land filled in from the Boueff Island side and from the Goose Island side. Plaintiff's title to any accretions would not extend beyond the point where the accretions to his land came in physical contact with the accretions to Goose Island. There is no sufficient evidence of record to determine where the accretions to plaintiff's land terminate.

Defendant states that when the tracts constituting his 26.81 acres on Goose Island were surveyed they were the west end of Goose Island, but, as we read the record, it is doubtful if he established that his metes and bounds description extended to the water's edge. He may be able to make such a showing upon a retrial. See Frank v. Goddin, 193 Mo. 390, 398, 91 S.W. 1057, 1059; Dumm v. Cole County, 315 Mo. 568, 577, 578, 287 S.W. 445, 449 [12].

Supreme Court Rule 83.13(c) provides: "Unless justice requires otherwise, the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears." We conclude that the record sustains the finding of the trial court against defendant on the issue of his adverse possession.

■ The judgment is reversed and the cause remanded with directions to conduct such further proceedings as may be necessary to determine the extent of the accretions, if any, forming against plaintiff's and defendant's lands, and the boundary between any such accretions. Consult Hecker v. Bleish, 319 Mo. 149, 177, 178, 3 S.W.2d 1008, 1020, 1021; Tillman v. Hutcherson, 348 Mo. 473, 154 S.W.2d 104, 110 [16]; Mann v. Mann, Mo., 193 S.W.2d 492, 494 [2, 3].

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.