Marion MACKEY, Plaintiff-Respondent,

v.

William B. WEAKLEY, Defendant-Appellant,

and

Ayers Oil Company of Pike County, a Missouri corporation, Defendant.

No. 33147.

St. Louis Court of Appeals.

Missouri.

Feb. 3, 1969.

Rehearing Denied March 24, 1969.

Edward D. Weakley, St. Louis, for defendant-appellant William B. Weakley.

McIlroy & Millan, Bowling Green, for plaintiff-respondent.

LACKLAND H. BLOOM, Special Commissioner.

William B. Weakley, defendant, has appealed from a judgment of the Circuit Court of Pike County decreeing that a certain triangular piece of property, which defendant possesses along with adjoining property under a contract to purchase, is a public road and enjoining defendant "from interfering with the reasonable use of this road by * * * the public in general and any person desiring to use the same" and ordering defendant "to clear the roadway of any and all obstructions and the fence constructed therein."

Ayers Oil Company of Pike County, although named as a defendant, filed no pleadings, did not participate in the trial, and was found by the court to be in default. No relief was sought by either party against that defendant and the court did not enter any judgment as to it. Defendant Weakley alone has appealed from the judgment.

■ Although a final judgment to be appealable must dispose of all the parties of the action, we will on the record before us assume that Ayers Oil Company of Pike County is no longer a party to this action and that the court intended to dismiss the action as to it.

Plaintiff,[1] a resident of Pike County, sought a decree declaring a portion of a certain tract of land allegedly owned by defendant Weakley to be a public road and sought an injunction enjoining defendant from interfering with the reasonable use of the road by the plaintiff and the public in general and any person desiring to use the same. Plaintiff alleged that the road had been maintained by the City of Clarksville as a public street for more than one hundred years and was used for many years by plaintiff and the public in general as a means of ingress and egress to various tracts of land along the road and at the

---

1. The parties will be referred to in accordance with their status as plaintiff and defendant in the trial court.

eastern end thereof until defendant undertook to build a fence along the western edge of the roadway for a considerable distance, both in a north and south and east and west direction, thereby partially obstructing the roadway. It is alleged that said use was open, exclusive, notorious, adverse and continuous and was never interfered with until defendant blocked a part of the road. Plaintiff's petition concedes the road is not impassable but alleges that a major part of the road at the western end has been obstructed by the fence constructed by defendant.

The tract of land in question, of which the triangular strip is a part, is located at the intersection of two roads near the southern boundary of the City of Clarksville. State Highway 79 borders the tract on the west, the gravel road in question dead ends at Highway 79 from the east and borders the tract on the south. Defendant's property is bordered on the east by railroad tracks of the C. B. & Q. Railroad. The public road proceeds eastward from Highway 79 to the C. B. & Q. tracks in the City of Clarksville, crosses the tracks, and continues eastwardly outside the City of Clarksville through bottom lands to the Mississippi River.

At the start of the trial the parties were of the opinion that defendant Weakley owned the property in question. However, during the trial it developed that defendant was in fact purchasing the property from one R. B. Pappenfort under a contract of sale which had been entered into in the summer of 1964. Possession of the property had been delivered to defendant on that date and it has been in his exclusive possession ever since, although no deed transferring title has passed. Defendant, having admitted ownership in his answer, was permitted by the court to amend the answer in conformity with the evidence.

The entire tract being purchased by defendant was once owned by Standard Oil Company. It is not clear as to when Standard Oil acquired the property, but there does not seem to be any doubt that they held it from at least 1936 or 1937 when Highway 79 was constructed. They sold the property to Pappenfort in 1957 who still holds title. Standard Oil used the property as a "bulk plant" and there is located on the tract a warehouse or pump house. Just to the south of the warehouse is located the triangular tract which plaintiff claims to be part of the public road and which defendant has caused to be fenced in. This triangular tract is located at the northeast corner of the intersection of Highway 79 and what is referred to as the public road.[2] According to plaintiff the fence defendant built cuts across the public road forty feet along the east edge of Highway 79 and extends from its southernmost point forty-five feet six inches eastwardly along and within the north edge of the public road. The hypotenuse of that triangle formed by this fence is, according to plaintiff, seventy-one feet six inches long.[3]

The roadway as originally platted was fifty-four feet wide. At the present time the fence erected by defendant along the northern edge of the roadway, according to Joseph Tadlock, who made surveys for both plaintiff and defendant, is a little over fifty-four feet, "almost fifty-five feet" from the south right of way line of the roadway. This would place the east-west fence north of the original right of way and on defendant's property. Plaintiff testified that he owned property east of the railroad crossing since 1935 and that he had used the roadway to reach his property even before Highway 79 was constructed. Prior to 1965 when defendant commenced to fence in the triangular tract he would use the roadway and tract on an

2. We will refer to this street or road hereafter for convenience merely as the "roadway" or "public road" and the particular triangular portion of property in dispute as the "triangular tract".

3. In its decree the court found the triangular strip to be thirty feet along Highway 79, 33.25 feet along the north side of the public road and 52.50 feet along the hypotenuse.

average of eight to ten times a week. The surface of the tract was gravel and at one time was blacktop. He observed other people using the tract. In the Spring of 1962 plaintiff had one Bernard McMenamy bring fill into his property and it would be brought in from the north on Highway 79 and the trucks would turn east on the roadway crossing the triangular tract in making their turn. According to plaintiff this tract was blacktop prior to McMenamy's trucks using it. The trucks tore it up pretty badly and the City of Clarksville had McMenamy repair the roadway and the tract. Richard W. Middleton testified that he was at one time the Standard Oil distributor in Clarksville from about 1925 to 1942. He testified that after Highway 79 was constructed in 1936 or 1937 the triangular tract was used by him and others as a "cut off" from Highway 79 over to the crossing there. Mackey Burns who owned a farm east of the railroad tracks testified he used the roadway as early as 1940. Prior to the fence being built the three-cornered tract was used "as an access to that turn-off for the bottom road". He had used it eight or ten times a week and saw other people using it.

Waivie Busch testified that she was a self-employed farmer, and has been using the roadway to reach her farm in the bottom land since 1934 about eight or ten times a week. The triangular tract was used by her for a roadway.

Joe Estes, an employee of plaintiff, had been using the roadway and tract for fifteen years prior to the trial. He said the surface was gravel and that other people used it prior to defendant erecting the fence.

John Estes testified that he drove a truck for Ayers Oil Company and has used the roadway everyday for twenty-three years. The triangular strip was used for a public thoroughfare. Other people used it, cars, trucks, farm equipment. It was an all weather surface. He saw maintenance men of the Eight Mile Road District and

Bernard McMenamy's men "maintaining it at one time". The time McMenamy's men were working there was in 1962 when they were hauling dirt down to the fill. They put dirt on it.

David Davidson stated he was familiar with the roadway for fifty-eight years. He traveled over the triangular tract for at least forty years. It was an all weather road. He was formerly President of the Eight Mile Road District. The roadway and triangular tract west of the tracks was not in his area but that east of the tracks was. The Eight Mile Road District had an agreement with the City of Clarksville for maintenance of the roadway west of the tracks. They did work on the triangular tract so far as grading was concerned. "That was all we did." They did not surface it. They did that over a period of thirty-one years.

R. B. Pappenfort testified on behalf of defendant that between 1925 and 1957 he was a sales representative of Standard Oil Company. In 1957 he purchased the property, of which the triangular tract in dispute was a part, from Standard Oil Company and still retains title. Defendant Weakley is in exclusive possession under a contract of sale. Pappenfort testified that from the time he purchased the property until he entered into a contract of sale with defendant the area extending from the north edge of the public roadway for about twenty feet north consisted of grass and a certain amount of vegetation on part of it.

According to Pappenfort, plaintiff was to keep the weeds mowed on the triangular tract in consideration of Pappenfort letting him put a sign up on the adjacent building. In 1962 large trucks hauling clay on the public road from Highway 79 were cutting across the corner of this property. Pappenfort objected to the superintendent of the construction company and they ceased cutting across there and it was smoothed down and regraded back into condition. The triangular tract was used

as a roadway prior to it being cut up by the heavy trucks. His reason for objecting was because of the deep ruts carved by the heavy trucks. He knew people were cutting across there. He only objected with respect to the heavy trucks in 1962 or 1963.

Nathone McPike, an employee of the Eight Mile Road District for the three years immediately prior to trial, testified that he did maintenance work on the public road but only east of the railroad tracks and that so far as he knew no one else worked on the maintenance on that road. No work was done from the railroad tracks to the highway.

Ray L. Pelliken, the Mayor of Clarksville since 1961, stated that in 1960 through 1962 there was a stop sign located at the public road intersection with Highway 79 on the southwest corner of the triangular tract. In 1963 the road became muddy and almost impassable because of trucks hauling dirt over it, and the City of Clarksville employed Lacy Bradshaw and Jackie Jamison to fill a portion of the public road and contracted with Missouri Petroleum to put a prime coat on it and seal it with pea gravel. No black top was ever put on the triangular tract.

D. H. Windmiller testified that between 1945 and 1952 he operated the bulk plant for Standard Oil Company. That the triangular tract was not then used as a public road but was all grass except for a circular cinder road he put in to get to the plant. He mowed the grass until 1952 with a hand mower. There was a stop sign on the corner which remained there until 1963. The first time he noticed anyone cutting across the triangular tract was when trucks were hauling dirt over to the fill in 1962 or 1963. Prior to that the tract was grass. On cross-examination he conceded that he couldn't say whether it was used as a roadway after 1952.

Defendant Weakley testified that when he entered into a contract to buy the property the triangular tract was dirt with some weeds and wild grass. He did not know the triangular tract was being used as a roadway. He had to import help to pick apples and he built the fence to keep the children of his workers off of the road. He had a survey made prior to the erection of the fence and the survey stakes were placed along the outer edge of the triangle.

■ The gist of this action is to enjoin the obstruction of an allegedly existing public road. Title to real estate is not directly involved and accordingly jurisdiction is in this court. Jenkins v. German, Mo.App., 298 S.W.2d 486, 487.

■ This being a case in equity we review the case upon the law and the evidence and determine the credibility, weight and value of the oral testimony and other evidence in the case, but in doing so we give due deference to the trial chancellor's findings as evidenced by its decree and do not set aside the judgment unless it is clearly erroneous. Long v. Kyte, Mo., 340 S.W. 2d 623, 628. R. E. Harrington, Inc. v. Frick, Mo.App., 428 S.W.2d 945, 948.

The trial court, in its judgment, found that the triangular tract of land described therein, "has been used by the public in general and that public moneys have been expended for the maintenance of a roadway on said property for more than ten (10) years continuously before the filing of Plaintiff's Petition; * * *." The court adjudged that the "roadway described herein and in the evidence is a public road" and ordered defendant to clear the roadway and the triangular tract of land of any obstructions and fence thereon.

It would thus appear that the trial court based its judgment on the finding that public moneys have been expended for the maintenance of the triangular tract for more than ten (10) years continuously before the filing of the petition.

Section 228.190, V.A.M.S., provides in part as follows:

"All roads in this state that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; *and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads;* * * *." (Emphasis added).

■ Although not cited by either party on this appeal we note that our Supreme Court held in 1966 that Section 228.190, V.A.M.S., applies to public roads, not to streets and alleys, stating that, "The section has, throughout its history, been a part of the state's road laws. See State v. Kitchen, 205 Mo.App. 31, 216 S.W. 981, 982. 'There can be no doubt that the Legislature has provided laws for streets and alleys separate and distinct from the general road laws.'" Rosemann v. Adams, Mo., 398 S.W.2d 855, 857. If the court means that the statute is never applicable within city boundaries, of course, it would not be applicable here since clearly that part of the roadway west of the railroad tracks is a street or road lying within the City of Clarksville. We need not pursue that question further, however, for the reason that we find that assuming the statute is generally applicable, under the evidence it cannot be invoked to sustain the decree in this case. Under the above statute our courts have held that in addition to public use, public money or labor must be expended for the required period. It is true that this does not require that public money or labor be expended in each year but only that the expenditure of one or the other must have been commenced and continued, from time to time, during the period of limitation to the end that the road is kept in substantial repair and condition for public use and travel. Liberty Township of Stoddard County v.

Telford, Mo., 358 S.W.2d 842; Jenkins v. German, supra.

■■ Viewing the evidence in this case in the light of the law as hereinabove set forth we fail to find sufficient evidence to sustain the finding of the court that public funds and labor were expended on the triangular tract at issue over the required period to establish the same as a public road. We do not doubt that some use was made of the tract as a convenient cutoff in leaving and entering Highway 79 sometime after that highway was established in 1936 or 1937. This is not sufficient alone to convert private property into a public road. Public funds and labor must have been expended to maintain the tract, as a public road, from time to time, during the period. The only evidence of expenditure of public labor on the roadway west of the railroad tracks was that of David Davidson, a director of the Eight Mile Road District. He stated that although the area was outside the road district which extended only east of the railroad tracks by agreement with the City of Clarksville he "graded" the roadway (including the tract) over a period of thirty-one years. They put no surfacing on it and apparently did nothing more than run a grader over it.

It may well be true that Davidson graded the road west of the tracks. The issue is to what extent were public funds or labor expended in maintaining defendant's property as part of the public roadway. The triangular tract was in Clarksville. Davidson's testimony was that he graded the public road (including the tract) by agreement with the Mayor or Street Commissioner for thirty-one years. Mr. Ray L. Pelliken, the Mayor of Clarksville since 1961, testified for defendant that in 1963 the City had some work done to repair damage done to the roadway by trucks of one Bernard McMenamy but denied that this was in the triangular tract or that work was done there, except for maybe ten feet on the corner. He stated the City had done no black topping on the triangle since

he has been Mayor and he never saw any black topping there. He stated that until 1963 a highway stop sign stood near the southwest corner of the triangle governing traffic moving west on the public road entering Highway 79. If true, this would have placed it near the middle of the alleged roadway and divided the main roadway and the cutoff. Shortly before trial a new sign was erected in about the same position. Other than the expenditure of funds in 1963 testified to by Mayor Pelliken, which involved no substantial part of the triangular tract, and the grading testified to by Davidson, there was no other evidence of the expenditure of public funds or labor. In fact Nathone McPike, an employee of the Eight Mile Road District at the time of trial, testified that he was operating the maintainer for the District during the three years preceding the trial and that no work was done on the roadway west of the tracks. We believe the testimony falls short of constituting the quantum of evidence necessary to sustain plaintiff's burden of proving the expenditure of public funds or labor on the particular tract in issue sufficient to establish it as a public road.

Plaintiff argues that even should we find that the triangular tract has not become a part of the public roadway by virtue of its use and the expenditure of public labor or funds thereon the decree should be affirmed for the reason that the evidence adduced was sufficient to establish an easement in the triangular tract by prescription.

■■ The Supreme Court in Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28, sets forth four essential facts which are required to be proved in order to sustain a claim to an easement by prescription. These are: (1) User for the prescribed period. (2) That the user be adverse. (3) That it be under a claim of right. (4) That the owner have notice of the use, its character and the claim of right. Plaintiff is required to prove each

essential element "by clear and positive evidence". Jenkins v. German, supra, 298 S.W.2d l. c. 489–490.

Surveys made by Joseph F. Tadlock for both plaintiff and defendant show clearly that the triangular tract was not originally part of the roadway, which extended fifty-four feet from the south right of way line. The fence erected by defendant was "a little bit over 54 feet almost 55 feet" from the south right of way line on the property of defendant as surveyed by Tadlock.

There was, however, conflicting evidence as to the use by the public of the triangular tract. Six witnesses testified that they and others used the "cutoff" for varying years as far back as 1927. David Davidson testified that he had used the triangular tract for a road for at least forty years, which would be some ten or eleven years before Highway 79 was constructed and prior to the bulk plant on defendant's property being relocated at its present site. The record is silent as to the terminus of the public road prior to the establishment of Highway 79. There can be little doubt, however, that the public road existed prior to that time. Defendant testified he had been familiar with the roadway for around fifty years. Assuming that the establishment of Highway 79 in 1936 or 1937 provided the first occasion for "cutting the corner" at the intersection with the public road, we cannot say under the evidence in this record that all or part of the triangular tract has not been so used, from time to time, since that date. R. B. Pappenfort, who owns the triangular tract which defendant is purchasing, and who testified for defendant, conceded that trucks of Ayers Oil Company and other "individuals" cut across a portion of the tract some fifteen to twenty feet south of the corner of the building. He did not protest such use, although in 1963 when the trucks of Bernard McMenamy cut it up he complained to McMenamy's superintendent and had the damage to the tract repaired.

In 1946 Mr. Windmiller constructed a circular cinder track around the bulk plant which extended into the triangular area plaintiff contends was part of the public roadway. Mr. Pappenfort testified that between 1957 and 1965 he mowed the grass in the area of the triangular tract and stated, without contradiction by plaintiff, that he permitted plaintiff to erect a sign on the building in consideration of plaintiff keeping the grass cut.

We believe it significant that although Ray L. Pelliken, Mayor of Clarksville, testified, he made no claim that the triangular tract was part of the roadway and in fact implied otherwise. Although present as a witness for defendant, plaintiff did not deem it important or fruitful to cross-examine him as to the maintenance of the tract by the City of Clarksville or any alleged agreement with the Eight Mile Road District for its maintenance. The Mayor had been a resident of the area for some forty-three years and was familiar with the intersection and the triangular tract. According to Pelliken only a small portion of the southwest corner of the tract had been used as part of the roadway prior to 1963. The City of Clarksville was not made a party nor did it seek to intervene to establish any claim or right to use the triangular tract by prescription or otherwise.

■ We believe plaintiff has failed to show by clear and positive evidence that whatever use he or the public made of the triangular tract it was adverse to the owner or that it was done under claim of right with knowledge by the owner of such claim.

■ Mere use of the triangular tract as a convenient "cutoff" because it was available for use or seemed to be intended for public use, does not alone show that the use is adverse or is exercised as a matter of right. 39 C.J.S. Highways § 14, page 933.

Under the evidence, we believe, whatever use of the tract was made by the public was permissive rather than adverse and that neither plaintiff nor the public acquired any easement by prescription over the triangular tract. Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193; Bridle Trail Association v. O'Shanick, Mo.App., 290 S.W.2d 401; Cook v. Bolin, Mo.App., 296 S.W.2d 181.

Because under the findings we have made the judgment and decree must be reversed, it is not necessary to pass upon the points raised by appellant either as to plaintiff's standing to maintain this action or whether or not R. B. Pappenfort, who retained legal title to the triangular tract, was a necessary party defendant.

The judgment and decree is reversed. We remand the case so that judgment may be entered dismissing plaintiff's petition as to defendant Ayers Oil Company of Pike County. At the same time judgment should be entered in favor of William B. Weakley and against plaintiff.

PER CURIAM:

The foregoing opinion by LACKLAND H. BLOOM, Special Commissioner, is adopted as the opinion of this Court. Accordingly, the judgment and decree of the trial court is reversed and the cause remanded with directions to enter judgment dismissing plaintiff's petition as to defendant Ayers Oil Company of Pike County and to enter judgment in favor of defendant William B. Weakley and against plaintiff.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.